1
2
3
4
5
6                        UNITED STATES DISTRICT COURT

7                              DISTRICT OF NEVADA

8                                  * * * * *

9    UBS FINANCIAL SERVICES, INC.,        )
                                          )
10                        Plaintiff,      )    3:14-cv-00141-LRH-WGC
                                          )
11   vs.                                  )    ORDER
                                          )
12   CAROLYN GARRETT; GARRETT             )
     BULLOCK; DIANN MARTIN; JASON         )
13   GARRETT; CATHERINE HINTZEN;          )
     BODHI GARRETT; RE-EVALUATION         )
14   COUNSELING COMMUNITY                 )
     RESOURCES, INC.; TRAVIS GARRETT;     )
15   CYNTHIA MITCHELL,                    )
                                          )
16                        Defendants.     )
                                          )
17   _____ )

18          This is an interpleader action between UBS Financial Services ("UBS") and the

19   beneficiaries of a Trust established by decedent Jo Anne Garrett ("the Trust").  Before the Court

20   are three motions filed by beneficiary Carolyn Garrett ("Garrett") and one motion filed by UBS,

21   which currently has possession of the Trust.  Garrett filed a Motion for Joinder on April 15, 2014

22   (Doc. #5),[1] a Motion for Summary Judgment on June 4, 2014 (Doc. #24), and a Motion for

23   Default Judgment on August 18, 2014 (Doc. #51).  On April 24, 2014, UBS filed a Response to

24   Garrett's Motion for Joinder (Doc. #13), to which Garrett replied (Doc. #15).  On June 18, 2014,

25   Defendants Garrett Bullock, Jason Garrett, and Diann Martin filed a Response to Garrett's

26   Motion for Summary Judgment (Doc. #30), to which Garrett replied (Doc. #34).

27   //

28
     _____
            [1] Refers to the Court's docket number.

1    On May 22, 2014, UBS filed a Motion requesting (1) permission to deposit funds, (2)

2    discharge from liability, (3) a permanent injunction, and (4) costs and attorney fees.  Doc. #19.

3    Garrett filed a Response (Doc. #26), to which UBS replied (Doc. #27).

4    The Court held a status conference on November 13, 2014.  Doc. #59.  At the status

5    conference, Garrett stated her intention to file a Motion for Judgment on the Pleadings, but failed

6    to file this motion despite numerous extensions of time.  On March 6, 2015, three weeks after

7    Garrett's final deadline, Garrett requested an additional month to file her Motion for Judgment

8    on the Pleadings.  Doc. #70.  The Court denies this request as untimely.  Having reviewed all

9    pleadings and oral argument presented by the parties, the Court enters this Order.

10   **I.      Factual Background and Procedural History**

11   Garrett's mother Jo Anne Garrett executed the "Jo Anne Garrett Family Trust" on August

12   12, 2002.  Doc. #5-1.  Jo Anne Garrett executed an amendment to the Trust on March 15, 2013

13   ("the Amendment"), naming Carolyn Garrett as the successor trustee and sole beneficiary.  Doc.

14   #5-2.  Jo Anne Garrett's attorney Peter J. Smith ("Smith") executed a Certificate of Independent

15   Review on March 5, 2013, stating that he (1) counseled Jo Anne Garrett regarding the

16   amendment; (2) was disassociated from the interest from the trust and could advise Jo Anne

17   Garrett impartially; and (3) concluded that the amendment was not the result of fraud, duress, or

18   undue influence.  Doc. #15-2.  Jo Anne Garrett passed away on October 14, 2013; her body was

19   found in a wooded area near her home after she had been reported missing on October 11, 2013.

20   Doc. #19 at 2.

21   In December, 2013, Smith contacted UBS on behalf of Carolyn Garrett and requested that

22   UBS recognize Garrett as the successor trustee.  *Id.*  An attorney for UBS called Smith on

23   January 2, 2014, and explained his concerns about the validity of the Amendment on the grounds

24   that Nevada Revised Statute ("NRS") § 155.097 presumes that a transfer to a caregiver that goes

25   into effect after a transferor's death is void.  Smith withdrew as Garrett's counsel on January 28,

26   2014.  *Id.*  UBS states that thereafter Garrett refused to help UBS determine whether individuals

27   identified as beneficiaries to the Trust prior to the Amendment had a claim to the Trust.  *Id.* at 3.

28   //

2

On March 10, 2014, UBS sent letters via certified mail to the individuals identified as beneficiaries to the original 2002 Trust.  *Id.*  These letters informed the beneficiaries about Garrett's demand for distribution of the Trust and asked the beneficiaries to contact counsel if they objected to the validity of the Amendment.  *Id.* at 3-4.  On March 13, 2014, the lawyer for one beneficiary, Diann Martin ("Martin"), sent a facsimile to UBS stating that Martin objected to the validity of the Amendment and sought to prove that Garrett "not only influenced her mother, but that Jo Anne Garrett was not in the proper state of mind at the time the [amendment] was made."  Doc. #19, Ex. F.  In an email written March 27, 2014, another beneficiary, Catherine Hintzen Garrison ("Garrison"), objected to the Amendment and stated that it was likely the result of undue influence by Garrett.  Doc. #14, Ex. C.

On March 17, 2014, UBS filed a Complaint for Interpleader pursuant to 28 U.S.C. § 1335 and Federal Rule of Civil Procedure 22, naming Carolyn Garrett, Garrett Bullock, Diann Martin, Jason Garrett, Catherine Hintzen [Garrison], Bodhi Garrett, Re-Evaluation Counseling Community Resources, Inc., Travis Garrett, and Cynthia Mitchell as Defendants.  Doc. #1. Garrett filed an Answer on April 10, 2014.  Doc. #4.  On May 9, 2014, attorney Bret Whipple ("Whipple") filed an Answer on behalf of Defendants Garrett Bullock, Diann Martin, Jason Garrett, Catherine Hintz[en Garrison], Bodhi Garrett, Travis Garrett, and Cynthia Mitchell.  Doc. #18.  Whipple filed an Amended Answer on July 3, 2014, which omitted Bodhi Garrett, Travis Garrett, and Cynthia Mitchell.  Doc. #35.  The Magistrate Judge granted Whipple's Motion to withdraw as counsel for Garrett Bullock, Diann Martin, Jason Garrett, and Catherine Hintzen Garrison on September 2, 2014.  Doc. #52.  Several named defendants have stated that they do not intend to object to the Amendment.[2]

//

//

---

[2] On March 14, 2014, Cynthia Mitchell signed an "Acknowledgment and Release," stating her belief that the Amendment is valid.  Doc. #24-4.  Bodhi Garrett filed an "Acknowledgment and Release" on July 30, 2014.  Doc. #49-1.  Garrett states that she served Travis Garrett with a Notion of Intention to Enter Default on August 7, 2014, but he has yet to respond.  Doc. #51 at 2.  UBS acknowledged at the November 13, 2014 status conference that Re-Evaluation Counseling has disclaimed its interest.

1  **II.      Discussion**

2          Federal district courts have original jurisdiction of an interpleader action if (1) two or

3  more adverse claimants have diversity of citizenship, and (2) the plaintiff has deposited the funds

4  at issue with the court. 28 U.S.C. § 1335.  The Court considers the parties' motions in turn,

5  having determined that it properly has jurisdiction under the interpleader statute.

6          **A.      Garrett's Motions**

7          Garrett has three motions before the Court: (1) Motion for Joinder; (2) Motion for

8  Summary Judgment; and (3) Motion for Default Judgment.

9                  **1.      Motion for Joinder**

10         The Federal Rules of Civil Procedure state that where feasible, a party should be joined if

11  (1) the court could not accord complete relief absent that party, or (2) the party's interest in the

12  matter is so significant that her absence would impair her ability to protect that interest, or leave

13  a party at substantial risk of incurring superfluous obligations.  Fed. R. Civ. P. 19(a).  Garrett has

14  already been joined as a Defendant in UBS's interpleader action, but argues that she should be

15  added as a necessary plaintiff instead because she was the sole beneficiary named in the

16  Amendment.

17         In Nevada, a transfer is presumed to be void if the transfer is effective on or after the

18  decedent's death and the transferee is a caregiver of the transferor.  NRS § 155.097(2)(b).  A

19  transfer to a caregiver is not presumed void if it is reviewed by an "independent attorney" who

20  (1) counsels the transferor about the transfer; (2) attempts to determine if the transfer is the result

21  of fraud, duress, or undue influence; and (3) signs and delivers to the transferor an original

22  certificate of the review.  NRS § 155.0975(3).  An "independent attorney" is an attorney who did

23  not draft the instrument in question, did not serve as the transferor's caregiver, did not arrange

24  for or pay for the drafting of the instrument in question, and did not serve as an attorney for

25  someone who acted as the transferor's caregiver or arranged for the creation of the instrument in

26  question.  *See* NRS § 155.094; NRS § 155.097(2).

27         Garrett argues that the Amendment is not presumed void because Smith was an

28  "independent attorney" as defined by § 155.097(2).  Smith signed a Certificate of Independent

1   Review on March 5, 2013, stating that he believed the amendment to be valid and not the product

2   of fraud, duress, or undue influence.  *See* Doc. #24-2.  UBS argues that Smith might not

3   constitute an independent attorney under § 155.0975 because he created the Amendment and

4   served as Garrett's attorney at one time.  *See* NRS § 155.094; NRS § 155.097(2).  UBS contends

5   further that Garrett was properly named as a Defendant because "it would seem premature to

6   designate Carolyn Garrett as successor trustee" in light of Nevada's presumption that an

7   amendment to a trust is void if it names a caregiver as the sole beneficiary.  Doc. #14 at 2.  UBS

8   adds that it would be inappropriate to join Garrett as a plaintiff because Martin and Garrison

9   previously stated that the Amendment was likely the result of undue influence or duress.  *Id.*

10      As discussed below, the Court has granted UBS' motion for discharge.  As there is no

11  dispute that Garrett is a beneficiary to the Trust, the Court grants her motion to be joined as

12  Plaintiff.  As such, all future filings shall identify Carolyn Garrett as Plaintiff.

13                    **2.      Motion for Summary Judgment**

14      Summary judgment is appropriate only when the pleadings, depositions, answers to

15  interrogatories, affidavits or declarations, stipulations, admissions, and other materials in the

16  record show that "there is no genuine issue as to any material fact and the movant is entitled to

17  judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In assessing a motion for summary

18  judgment, the evidence, together with all inferences that can reasonably be drawn therefrom,

19  must be read in the light most favorable to the party opposing the motion.  *Matsushita Elec.*

20  *Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Cnty. of Tuolumne v. Sonora Cmty.*

21  *Hosp.*, 236 F.3d 1148, 1154 (9th Cir. 2001).

22      To successfully rebut a motion for summary judgment, the nonmoving party must point to

23  facts supported by the record that demonstrate a genuine issue of material fact.  *Reese v.*

24  *Jefferson Sch. Dist. No. 14J*, 208 F.3d 736, 738 (9th Cir. 2000).  A "material fact" is a fact "that

25  might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*,

26  477 U.S. 242, 248 (1986).  Where reasonable minds could differ on the material facts at issue,

27  summary judgment is not appropriate.  *See v. Durang*, 711 F.2d 141, 143 (9th Cir. 1983).  A

28  dispute regarding a material fact is considered genuine "if the evidence is such that a reasonable

1    jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248.  The mere

2    existence of a scintilla of evidence in support of the party's position is insufficient to establish a

3    genuine dispute; there must be evidence on which a jury could reasonably find for the party.  *See*

4    *id.* at 252.  "[S]peculative and conclusory arguments do not constitute the significantly probative

5    evidence required to create a genuine issue of material fact." *Nolan v. Cleland*, 686 F.2d 806,

6    812 (9th Cir. 1982).

7            Defendants' Opposition to Garrett's Motion states the applicable legal standards, but does

8    not refer to any facts or evidence to support the argument that summary judgment is not

9    appropriate.  Merely stating reasons for opposing summary judgment without pointing to any

10   evidence of fact to support such claims does not preclude summary judgment.  *See Liberty*

11   *Lobby*, 477 U.S. at 252; *Nolan*, 686 F.2d at 812.  "[A] complete failure of proof concerning an

12   essential element of the nonmoving party's case necessarily renders all other facts immaterial."

13   *Celotex Corp.*, 477 U.S. at 323.  Defendants' Opposition merely states that "the Amendments to

14   the Jo Anne Garrett Family Trust are in question, and to grant Summary Judgment would cause

15   irreparable harm to the hereinabove captioned defendants.  Moreover, no discovery has been

16   conducted in this case and therefore, summary judgment would be inappropriate at this time."

17   Doc. #30 at 6.  These are exactly the type of conclusory allegations that do not create genuine

18   questions of material fact.  *Nolan*, 686 F.2d at 812.

19           Based on evidence in the record, however, Defendants' failure to identify evidence to

20   support genuine issues of material fact does not indicate that no reasonable trier of fact could find

21   for the nonmoving party.  *See Liberty Lobby*, 477 U.S. at 248.  First, the parties dispute whether

22   Smith was an "independent attorney" as defined by Nevada law, and by extension whether

23   Smith's Certificate of Independent Review rebuts Nevada's presumption that a transfer to the

24   transferor's caregiver is void if it is effective on or after the decedent's death.  *See* NRS §

25   155.0975(3).  Second, immediately after UBS approached the beneficiaries who were excluded

26   by the Amendment, Martin and Garrison wrote letters stating their belief that the Amendment

27   was the result of undue influence or duress.  Martin and Garrison have not withdrawn these

28   letters.  Although Defendants failed to refer to these letters—or any other disputed facts—in their

1   Opposition, the Court cannot ignore them, especially in light of Nevada presumption that the

2   Amendment is void.  Accordingly, the Court denies Garrett's Motion for Summary Judgment

3   without prejudice because Garrett has failed to show that there are no genuine issues of material

4   fact.  *See id.* at 255 (noting that a district court has discretion to "deny summary judgment in a

5   case where there is reason to believe that the better course would be to proceed.").

6                       **3.        Motion for Default Judgment**

7              A defendant must answer a complaint within twenty-one days of being served.  Fed. R.

8   Civ. P. 12(a)(1)(A)(I).  As for any complaint, failure to answer an interpleader complaint can

9   justify entry of default judgment.  *See Ganz & Hauf, CHTD v. U. Med. Ctr. of S. Nev.*, No. 2:10-

10  cv-0996, 2012 WL 6626894, at *2 (D. Nev. Dec. 18, 2012) (granting default judgment because

11  "by failing to respond to the interpleader complaint, aforementioned defendants are essentially

12  conceding their interest," among other factors); *Benson v. Bingham, LLC v. Ventura*, No. 2:09-

13  cv-2220, 2010 WL 2681755, at *3 (D. Nev. July 1, 2010) (granting default judgment where

14  defendants failed to respond to interpleader complaint filed by law firm).  When a party seeks

15  default judgment against "one or more, but fewer than all" defendants, default judgment is

16  appropriate "only if the court expressly determines that there is no just reason for delay."  Fed. R.

17  Civ. P. 54(b).

18            Garrett argues that the Court should enter default judgment against Defendants Cynthia

19  Mitchell, Bodhi Garrett, and Travis Garrett, the three individuals who were removed from the

20  Amended Answer on July 3, 2014.  Doc. #51 at 2.  Cynthia Mitchell and Bodhi Garrett have each

21  signed "Acknowledgment and Release" forms, stating that they do not oppose the Amendment.

22  Doc. #24-4; Doc. #49-1.  Garrett also states that Re-Evaluation Counseling Community

23  Resources signed an "Acknowledgment and Release" form, and UBS acknowledged at the

24  November 13, 2014 status conference that Re-Evaluation Counseling has disclaimed an interest

25  in the Trust.  Garrett argues that default judgment should also be entered against Travis Garrett

26  because he was served the interpleader action on April 24, 2014, and his Answer was due on

27  May 14, 2014, but he never responded.

28  //

The Court grants default judgment as to those—Cynthia Mitchell, Bodhi Garrett, and Re-Evaluation Counseling—who disclaimed their interest in the Trust.  The Court also enters judgment against Travis Garrett for his failure to respond to the interpleader action.

**B.    UBS's Motion**

UBS filed a motion for (1) permission to deposit funds, (2) discharge from liability, (3) permanent injunction, and (4) costs and attorney fees.  Doc. #19.  UBS maintains that it is a "mere stakeholder" in the account and claims no right to the funds, but wants to ensure that the Trust is distributed legally.

**1.    Motion to Deposit Funds**

A court can grant discharge of an interpleader plaintiff only after the stakeholder has fulfilled the requirements of 28 U.S.C. § 1335—including depositing the funds with the court. *John Hancock Life Ins. Co. v. Jacobs*, No. 2:13-cv-0557, 2014 WL 587521, at *1 (D. Nev. Feb. 13, 2014).  The Court has discretion under the interpleader statute to permit UBS to deposit the Trust funds with the Court.  *See Unigard Mut. Ins. Co. v. Abbott*, 732 F.2d 1414, 1419 (9th Cir. 1984) (stating that the district court had discretion to require the insurance company to pay interest "in order to prevent unjust enrichment of the stakeholders").

Despite UBS's stated ambivalence to the fate of the funds in dispute, UBS argues that it cannot distribute the funds "without determining dispute[d] questions of fact and law and thereby exposing itself to the potential of multiple liability."  Doc. #19 at 4.  Garrett opposes UBS's motion to deposit funds because as the stated beneficiary in the Trust amendment, Garrett argues that the funds should be distributed directly to her or placed in an investment account.  Doc. #26 at 5.  Garrett argues that if the funds are not dispersed or placed in an investment account, then she will be deprived of the opportunity to invest funds to which she is lawfully entitled.  The Court finds that UBS has a legitimate interest in depositing the Trust with the Court, and that deposit will not cause undue prejudice to Garrett.  Accordingly, the Court Orders that the Trust be deposited with the Court in an interest bearing account.

//

//

8

1

## 2.  Discharge and Permanent Injunction

2   The interpleader statute states that once a stakeholder deposits the disputed funds with the

3   Court, the Court can "discharge the plaintiff from further liability, [and] make the injunction

4   permanent."  28 U.S.C. § 2361; *see Jackson Nat'l Life Ins. Co. v. Cabrera*, 48 Fed. Appx. 618,

5   619 (9th Cir. 2002) (noting that once a stakeholder has "deposited the death benefit and past

6   interest with the court, thereby discharging its obligations," the district court has discretion to

7   discharge the stakeholder from the suit).  UBS argues that discharge and permanent injunction is

8   appropriate here because UBS will satisfy its obligation to Defendants once it deposits the funds

9   with the Court.

10   Garrett concedes that discharge is proper here, but notes that Defendants should not be

11   permanently enjoined from bringing suit based on UBS's liability for its own negligence or

12   breach of contract related to its role in this action.  *See Knights of Columbus v. Va. Trust*, No.

13   2:12-cv-0688, 2012 WL 4964175, at *1 (D. Nev. Oct. 16, 2012) (granting discharge and a

14   permanent injunction but noting that those rulings do not apply to "any and all losses suffered by

15   [Defendants] due to [Plaintiffs'] negligence, breach of contract and contractual duties, and any

16   other applicable claims arising from [Plaintiffs'] conduct with regard to the policies at issue").

17   The Court agrees.  Accordingly, the Court discharges UBS from liability as to the Trust, but this

18   discharge does not apply to liability resulting from conduct by UBS unrelated to bringing this

19   interpleader action.  The Court also enjoins Defendants from commencing an action against

20   UBS, but this injunction shall not apply to any claims against UBS unrelated to bringing this

21   action.  *See id.*, at *1-2.

22

## 3.  Attorney Fees

23   District courts "have discretion to award attorney fees to a disinterested stakeholder in an

24   interpleader action."  *Abex Corp. v. Ski's Enter., Inc.*, 748 F.2d 513, 516 (9th Cir. 1984).  "[T]he

25   availability of attorneys' fees for interpleader plaintiffs recognizes that by bringing the action, the

26   plaintiff benefits all parties by promoting early litigation on the ownership of the fund, thus

27   preventing dissipation."  *Trs. of the Dirs. Guild of Am. v. Tise*, 234 F.3d 415, 426 (9th Cir. 2000).

28   "Since Attorneys' fees are deducted from the interpleaded fund, policy requires courts to

consider the impact on the party who is ultimately deemed entitled to funds." *Emp. Painters Trust v. Riggio Bros. Const., Inc.*, No. 09-1831, 2011 WL 2923710, at *4 (D. Nev. July 18, 2011).  Plaintiffs in interpleader actions generally are not entitled to costs and attorney fees if they have a stake in the proceedings, and courts have discretion to limit costs and fees to those spent filing the action.  *See id.*; *see also Mut. of Omaha Ins. Co. v. Estate of Arachikavitz*, No. 2:06-cv-0830, 2007 WL 2788604, at *5 (D. Nev. Sept. 21, 2007) ("Because the interpleader plaintiff is supposed to be disinterested in the ultimate disposition of the fund, attorneys' fee awards are properly limited to those fees that are incurred in filing the action and pursuing its release from liability, not in litigating the merits of the adverse claimants' positions.").

UBS argues that it should be awarded costs and attorney fees because it became necessary to file this interpleader action "despite repeated attempts to facilitate a resolution without judicial intervention."  Doc. #19 at 6.  UBS adds that the costs and attorney fees should be paid from the funds in the account rather than by a particular Defendant.  Garrett argues that UBS is not entitled to costs and attorney fees because it had a fiduciary obligation to preserve the funds in the account, and should not be rewarded for misreading the applicable statutes and failure to disperse the funds to Garrett immediately upon Jo Anne Garrett's death.  Garrett argues that rather than benefitting the defendants, UBS's conduct has "arbitrarily increased costs and caused controversy among the parties."  Doc. #26 at 8.

The Court disagrees, and finds that it was reasonable for UBS to file this interpleader action because there was a dispute as to whether (1) the Amendment was the result of undue influence, (2) Smith was an independent attorney as defined by NRS § 155.097(2), and (3) other beneficiaries objected to the validity of the Amendment.  Accordingly, the Court finds that UBS is entitled to reasonable attorney fees, and will consider a Motion for Attorney Fees filed pursuant to Local Rule 54-16 within fourteen (14) days of this Order.  *See* D. Nev. R. 54-16.

**III.    Conclusion**

IT IS THEREFORE ORDERED that Garrett's Motion for Joinder (Doc. #5) is GRANTED.  All future filings in this action shall identify Carolyn Garrett as Plaintiff.

//

1    IT IS FURTHER ORDERED that Garrett's Motion for Summary Judgment (Doc. #24) is
2  DENIED without prejudice.

3    IT IS FURTHER ORDERED that Garrett's Motion for Default Judgment (Doc. #51) is
4  GRANTED.  The Court hereby enters judgment against Cynthia Mitchell, Bodhi Garrett, Re-
5  Evaluation Counseling Community Resources, and Travis Garrett.

6    IT IS FURTHER ORDERED that Garrett's request for further extension to file a Motion
7  for Judgment on the Pleadings (Doc. #70) is DENIED.

8    IT IS FURTHER ORDERED that UBS's Motion to Deposit Funds (Doc. #19) is
9  GRANTED.

10    IT IS FURTHER ORDERED that UBS's Motion for Discharge (Doc. #19) is
11  GRANTED.

12    IT IS FURTHER ORDERED that UBS's Motion for Permanent Injunction (Doc. #19) is
13  GRANTED.

14    IT IS FURTHER ORDERED that UBS shall file a Motion for Reasonable Attorney Fees
15  within fourteen (14) days of this Order.  Garrett shall thereafter file a response within fourteen
16  (14) days of any motion by UBS, and UBS shall have seven (7) days to file a reply.

17    IT IS FURTHER ORDERED that this matter is referred to Magistrate Judge Cobb for a
18  scheduling conference within thirty (30) days of this Order.  Plaintiff Garrett and participating
19  Defendants shall cooperate fully with the Magistrate Judge, although Judge Cobb may allow
20  telephone appearance by the parties.

21    IT IS SO ORDERED.
22    DATED this 9th day of March, 2015.
23
24  LARRY R. HICKS
    UNITED STATES DISTRICT JUDGE
25
26
27
28

11