RECEIVED
___ ENTERED          ___ SERVED ON
                     COUNSEL/PARTIES OF RECORD

MAY 28 2015

CLERK US DISTRICT COURT
DISTRICT OF NEVADA
BY: _____ DEPUTY

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \* \* \*

| | |
|---|---|
| CAROLYN GARRETT, | ) |
| Plaintiff, | ) 3:14-cv-00141-LRH-WGC |
| vs. | ) ORDER |
| GARRETT BULLOCK; DIANN MARTIN; CATHERINE HINTZEN; JASON GARRETT, | ) |
| Defendants. | ) |

Before the Court is former interpleader Plaintiff UBS Financial Services Inc.'s ("UBS") Motion for Reasonable Attorney Fees and Costs. Doc. #72.[1] Beneficiary Carolyn Garrett ("Garrett") filed an Opposition (Doc. #75), to which UBS replied (Doc. #78). Also before the Court is Garrett's Motion for Relief from a Judgment or Order. Doc. #77. UBS filed an Opposition (Doc. #82), to which Garrett replied (Doc. #87). Garrett also filed a Supplemental Opposition to UBS's Motion for Attorney Fees and Costs, and Motion to Extend Time to Oppose (Doc. #86), to which UBS replied (Doc. #89).

I.  **Factual Background and Procedural History**

Garrett's mother Jo Anne Garrett executed the "Jo Anne Garrett Family Trust" on August 12, 2002. Doc. #5-1. Jo Anne Garrett executed an amendment to the Trust on March 15, 2013 ("the Amendment"), naming Carolyn Garrett as the successor trustee and sole beneficiary. Doc. #5-2. Jo Anne Garrett's attorney Peter J. Smith ("Smith") executed a Certificate of Independent

---

[1] Refers to the Court's docket number.

Review on March 5, 2013, stating that he (1) counseled Jo Anne Garrett regarding the Amendment; (2) was disassociated from the interest from the trust and could advise Jo Anne Garrett impartially; and (3) concluded that the Amendment was not the result of fraud, duress, or undue influence. Doc. #15-2. Jo Anne Garrett passed away on October 14, 2013; her body was found in a wooded area near her home after she had been reported missing on October 11, 2013. Doc. #19 at 2.

In December, 2013, Smith contacted UBS on behalf of Carolyn Garrett and requested that UBS recognize Garrett as the successor trustee. *Id.* An attorney for UBS called Smith on January 2, 2014, and explained his concerns about the validity of the Amendment on the grounds that Nevada Revised Statute ("NRS") § 155.097 presumes that a transfer to a caregiver that goes into effect after a transferor's death is void. Smith withdrew as Garrett's counsel on January 28, 2014. *Id.* UBS states that thereafter Garrett refused to help UBS determine whether individuals identified as beneficiaries to the Trust prior to the Amendment had a claim to the Trust. *Id.* at 3.

On March 10, 2014, UBS sent letters via certified mail to the individuals identified as beneficiaries to the original 2002 Trust. *Id.* These letters informed the beneficiaries about Garrett's demand for distribution of the Trust and asked the beneficiaries to contact counsel if they objected to the validity of the Amendment. *Id.* at 3-4. On March 13, 2014, the lawyer for one beneficiary, Diann Martin ("Martin"), sent a facsimile to UBS stating that Martin objected to the validity of the Amendment and sought to prove that Garrett "not only influenced her mother, but that Jo Anne Garrett was not in the proper state of mind at the time the [amendment] was made." Doc. #19, Ex. F. In an email written March 27, 2014, another beneficiary, Catherine Hintzen Garrison ("Garrison"), objected to the Amendment and stated that it was likely the result of undue influence by Garrett. Doc. #14, Ex. C.

On March 17, 2014, UBS filed a Complaint for Interpleader pursuant to 28 U.S.C. § 1335 and Federal Rule of Civil Procedure 22, naming Carolyn Garrett, Garrett Bullock, Diann Martin, Jason Garrett, Catherine Hintzen [Garrison], Bodhi Garrett, Re-Evaluation Counseling Community Resources, Inc., Travis Garrett, and Cynthia Mitchell as Defendants. Doc. #1. Garrett filed an Answer on April 10, 2014. Doc. #4. On May 9, 2014, attorney Bret Whipple

("Whipple") filed an Answer on behalf of Defendants Garrett Bullock, Diann Martin, Jason Garrett, Catherine Hintz[en Garrison], Bodhi Garrett, Travis Garrett, and Cynthia Mitchell. Doc. #18. Whipple filed an Amended Answer on July 3, 2014, which omitted Bodhi Garrett, Travis Garrett, and Cynthia Mitchell. Doc. #35. The Magistrate Judge granted Whipple's Motion to withdraw as counsel for Garrett Bullock, Diann Martin, Jason Garrett, and Catherine Hintzen Garrison on September 2, 2014. Doc. #52. Several named defendants stated that they do not intend to object to the Amendment.[2]

On March 10, 2015, the Court entered an Order granting Garrett's Motion for Joinder in part, denying Garrett's Motion for Summary Judgment, granting Garrett's Motion for Default Judgment, and denying Garrett's Motion for Further Extension to File a Motion for Judgment on the Pleadings. Doc. #71. The Court also granted UBS's Motion to Deposit Funds, Motion for Discharge, Motion for Permanent Injunction, and Motion to File for Reasonable Attorney Fees. *Id.* UBS filed its Motion for Attorney Fees on March 16, 2015, and Garrett filed her Motion to Reconsider on April 7, 2015.

**II.    Discussion**

There are two motions currently pending before the Court: (1) UBS's Motion for Attorney Fees, and (2) Garrett's Motion to Reconsider the Court's March 10, 2015 Order. The Court considers UBS's Motion for Attorney Fees after Garrett's Motion to Reconsider.

**A.    Motion to Reconsider**

Garrett has moved for reconsideration under Federal Rule of Civil Procedure 60(b), which provides grounds for relief from a final judgment or order. "Reconsideration is appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in

---

[2] On March 14, 2014, Cynthia Mitchell signed an "Acknowledgment and Release," stating her belief that the Amendment is valid. Doc. #24-4. Bodhi Garrett filed an "Acknowledgment and Release" on July 30, 2014. Doc. #49-1. Garrett states that she served Travis Garrett with a Notion of Intention to Enter Default on August 7, 2014, but he did not respond. Doc. #51 at 2. UBS acknowledged at the November 13, 2014, status conference that Re-Evaluation Counseling Community Resources has disclaimed its interest.

3

...
...

controlling law." *School Dist. No. 1J, Multnomah Cnty., Or. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993). A motion for reconsideration is not a substitute for a timely appeal, and a motion can be denied if a party merely uses the motion to reargue its case. *See Am. Ironworks & Erectors, Inc. v. N. Am. Const. Corp.*, 248 F.3d 892, 899 (9th Cir. 2001) (finding that the district court did not abuse its discretion in denying a motion to amend because the moving party merely reargued its case). District courts have discretion regarding whether to grant a motion to amend under Rule 60(b). *Wood v. Ryan*, 759 F.3d 1117, 1121 (9th Cir. 2014).

Garrett's Motion fails to identify newly discovered evidence or an intervening change in controlling law to justify reconsideration under Rule 60. The Court therefore presumes that Garrett's Motion is premised on the belief that certain portions of the Court's March 10, 2015, Order constituted clear error. Much of Garrett's Motion rehashes arguments that Garrett has repeatedly made throughout this litigation. However, the Court's March 10, 2015, Order made a number of findings that Garrett considers adverse to her position: (1) declining to grant Garrett's Motion for Joinder of Carolyn Garrett as Trustee; (2) denying her Motion for Summary Judgment; (3) granting her motion for default judgment;[3] (4) denying her request for further extension to file a Motion for Judgment on the Pleadings; and (5) granting UBS's motion to deposit funds, for discharge from liability, for permanent injunction, and to file attorney fees. Doc. #71 at 10-11.

1. **Motion for Joinder**

Garrett argues that the Court erred in joining Garrett as a Plaintiff to this lawsuit, and declining to grant Garrett's Motion to join herself as a Trustee-defendant. The Court joined Garrett as a Plaintiff because it had dismissed plaintiff-intervener UBS in the same order, thereby necessitating joinder of a plaintiff.[4] This was not clear error. Fed. R. Civ. P. 20(a)(1) (plaintiffs

---

[3] Although resolved in her favor, Garrett objects to the Court's grant of her Motion for Default Judgment "because it relied upon [her] attorney being ordered by the court to get rid of UBS's 'defendants.'" *See* Doc. #87 at 4.

[4] The Court inadvertently identified this as a motion to join Garrett as an individual plaintiff, when in fact Garrett moved to join herself in a Trustee capacity.

can be joined if "they assert any right to relief . . . arising out of the same transaction, occurrence, or series of transactions or occurrences," and "any question of law or fact common to all plaintiffs will arise in the action"). The Court notes that joining Garrett as a Plaintiff does not impact her legal rights, including any right to claim funds from the Trust, or to become Trustee.

The Court declined to join Garrett in a Trustee capacity because under Nevada law, a transfer to a caregiver that is effective on or after the decedent's death is presumed void. NRS § 155.097(2)(b). The Statute includes an exception if the instrument is reviewed by an "independent attorney." NRS § 155.0975(3). An "independent attorney" is an attorney who did not draft the instrument in question, did not serve as the transferor's caregiver, did not arrange for or pay for the drafting of the instrument in question, and did not serve as an attorney for someone who acted as the transferor's caregiver or arranged for the creation of the instrument in question. See NRS § 155.094; NRS § 155.097(2). The Court declined to join Garrett as a Trustee because the record indicates that the Amendment was presumed to be void, and a question remained regarding whether Smith—who created the Amendment—was an "independent attorney."[5] Doc. #71 at 5. Moreover, two beneficiaries, Martin and Garrison, wrote to UBS stating their belief that the Amendment was the result of undue influence or duress. Id. There remains a dispute as to whether Smith was an independent attorney, and Martin and Garrison still have not withdrawn their objections to the Amendment. As such, Garrett is not currently the Trustee in this action. Accordingly, the Court did not commit clear error in declining to join Garrett in a Trustee capacity.

2.      **Motion for Summary Judgment**

The Court denied Garrett's Motion for Summary Judgment because there remained disputes as to whether Smith was an "independent attorney" under Nevada law, and whether beneficiaries continued to dispute the validity of the Amendment. Id. at 6-7. Garrett argues that

---

[5] Garrett represents that UBS admitted in a document that Smith was an independent attorney. Doc. #87 at 4. However, the document cited (Doc. #1, Ex. C) states exactly the opposite: "Since Mr. Smith drafted the transfer instrument (the Amended Trust), and since he, on more than one occasion, identifies himself as your attorney, we do not believe that he meets the Nevada statutory definition of 'independent attorney.'"

it was error for the Court to find that Martin and Garrison had not withdrawn their challenges to the validity of the Amendment. Doc. #87 at 5-6. The record indicates, however, that Garrison and Martin expressly challenged the validity of the Amendment (Doc. #19, Ex. F; Doc. #14, Ex. C), and have not yet withdrawn these objections. Additionally, there remains a dispute as to whether Smith was an "independent attorney" under Nevada law. Accordingly, it was not clear error for the Court to deny Garrett's Motion for Summary Judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (noting that a district court has discretion to "deny summary judgment in a case where there is reason to believe that the better course would be to proceed.").

### 3. Motion for Default Judgment

The Court granted Garrett's Motion for Default Judgment against Cynthia Mitchell, Bodhi Garrett, and Re-Evaluation Counseling Community Resources because each signed "Acknowledgment and Release" forms, stating that they did not oppose the Amendment. Doc. #71 at 7. The Court granted Garrett's Motion for Default Judgment against Travis Garrett because he was served the interpleader action on April 24, 2014, and his Answer was due on May 14, 2014, but he never responded. *Id.; see Ganz v. Hauf, CHTD v. U. Med. Ctr. Of S. Nev.*, 2:10-cv-0996, 2012 WL 6626894, at *2 (D. Nev. Dec. 18, 2012) (granting default judgment because "by failing to respond to the interpleader complaint, aforementioned defendants are essentially conceding their interest," among other factors). Despite having moved for default judgment against these defendants, Garrett states that granting her motion "was a mistake and needs review because it relied upon [her] attorney being ordered by the court to get rid of UBS's 'defendants.'" Doc. #87 at 4. Despite claiming that she no longer believes that entry of default judgment was appropriate, Garrett has not shown that it was clear error for the Court to grant her motion, or that this ruling was the result of misrepresentation or fraud. *See De Saracho v. Custom Food Mach., Inc.*, 206 F.3d 874, 880 (9th Cir. 2000) (finding that to obtain reconsideration under Federal Rule of Civil Procedure 60(b)(3), the moving party must show by clear and convincing evidence that the ruling was the result of misrepresentation or fraud).

///

### 4. Motion for Further Extension

The Court held a status conference on November 13, 2014. Doc. #59. At the status conference, Garrett stated her intention to file a Motion for Judgment on the Pleadings, and the Court granted allowed her to file this Motion on or before December 3, 2014. *Id.* On December 9, 2014, the Court granted an unopposed motion to extend time, permitting Garrett to file a Motion for Judgment on the Pleadings on or before December 24, 2014. Doc. #63. Garrett missed this deadline and filed another Motion to Extend Time on December 29, 2014. Doc. #65. The Court granted this motion on December 31, 2014, allowing Garrett until January 28, 2015, to file her motion, and noting that "No further extensions shall be granted." Doc. #66. On January 28, 2015, Garrett filed a Motion to Clarify Order, effectively requesting additional time to file her motion. Doc. #67. The Court granted Garrett's Motion on February 2, 2015, allowing Garrett until February 12, 2015, to file her motion, and again noting "There will be no further extensions." Doc. #69. Garrett did not file her motion by February 12, 2015, but on March 6, 2015, filed a Motion requesting further extension of time, among other relief. Doc. #70. In its March 10, 2015, Order on the other pending motions, the Court denied Garrett's Motion as untimely. Doc. #71 at 2.

The Court acknowledges that as a pro se litigant, it is more difficult for Garrett to construct legal arguments than it would be for a seasoned attorney. However, "pro se litigants in the ordinary civil case should not be treated more favorably than parties with attorneys of record." *Jacobsen v. Filler*, 790 F.2d 1362, 1364 (9th Cir. 1986). The Court granted Garrett multiple extensions of time to file her motion, stating twice that she would receive no further extensions. Garrett failed to file her motion within the time provided, and instead filed a motion to extend time three weeks after the final deadline. The Court reaffirms its decision to deny Garrett's Motion for further extension. *See Manley v. Zimmer*, No. 3:11-cv-0636, 2014 WL 4471662, at *6 (D. Nev. Sept. 10, 2014) ("[I]t is the trial court's responsibility to exercise its discretion in granting or denying extensions of time as it manages the progress of litigation.").

///

///

### 5. UBS's Motions

The Court granted each of UBS's four Motions: (1) to deposit funds; (2) for discharge; (3) for permanent injunction; and (4) for reasonable attorney fees. Doc. #71 at 11. Garrett's Motion to Reconsider these rulings is based largely on the same arguments that she previously raised—that UBS never should have instituted the interpleader action, and caused unnecessary delay. A party cannot use a motion to reconsider merely to reargue its case. *See Am. Ironworks & Erectors, Inc.*, 248 F.3d at 899 (finding that the district court did not abuse its discretion in denying a motion to amend because the moving party merely reargued its case). By merely re-alleging the same arguments Garrett made prior to the Court's Order, Garrett has not identified newly discovered evidence, clear error, or an intervening change in controlling case law to justify reconsideration.

Garrett also argues that the Court should reconsider the March 10, 2015, Order on UBS's Motion because UBS "engaged in fraud and other misconduct during the preparation of the Interpleader and perpetrated fraud upon the court by misrepresenting almost every 'fact' in the presentation to the Court." Doc. #77 at 10; Fed. R. Civ. P. 60(b)(3) (recognizing fraud, misrepresentation, or misconduct by an opposing party as legitimate grounds for relief from a final judgment). To prevail on a motion to reconsider for fraud, misrepresentation, or misconduct under Rule 60(b)(3), "the moving party must prove by clear and convincing evidence that the verdict was obtained through fraud, misrepresentation, or other misconduct and the conduct complained of prevented the losing party from fully and fairly presenting the defense." *De Saracho*, 206 F.3d at 880. "The rule is aimed at judgments which were unfairly obtained, not at those which are factually incorrect." *In re M/V Peacock on Complaint of Edwards*, 809 F.2d 1403, 1405 (9th Cir. 1987); *Peck v. Nevin*, No. 2:12-cv-0782, 2015 WL 1384930, at *1-2 (D. Nev. Mar. 25, 2015).

Garrett identifies six of the "most disturbing" facts that were allegedly misrepresented to the Court by UBS: (1) that Smith was Carolyn Garrett's attorney while he was Jo Anne Garrett's attorney; (2) that UBS disputed whether Smith was an "independent attorney"; (3) that Garrett refused to help UBS verify the Amendment by contacting other beneficiaries; (4) that UBS

offered Garrett the option of a declaratory judgment determination to prove the Trust was valid; (5) that UBS attempted to avoid litigation by contacting beneficiaries to the Trust; and (6) that there were claims against the trust that necessitated the interpleader action. Doc. #77 at 11. These representations are either irrelevant, or supported by law or documentation to indicate that they were not misrepresentations. First, the fact that Smith wrote the Amendment to the Trust raises the question of whether he was an "independent attorney" and acting for Garrett's benefit. *See* NRS § 155.094; NRS § 155.097(2); Doc. #82, Ex. 1. Second, Garrett indicated in a letter that she would not help UBS contact beneficiaries of the Trust. Doc. #19, Ex. D at 5. Third, whether or not UBS offered Garrett the option of declaratory judgment was irrelevant to the Court's analysis. Fourth, the record indicates that UBS attempted to avoid litigation by sending all former beneficiaries acknowledgment and release forms prior to filing the interpleader action. *See* Doc. #19, Ex. C. Furthermore, Nevada's presumption of invalidity for this type of Amendment made it necessary for UBS to contact the Trust's former beneficiaries in an attempt to validate the Amendment. Fifth, both Martin and Garrison objected to the Amendment as being potentially the result of undue influence. Doc. #19, Ex. F; Doc. #14, Ex. C.

Despite referencing these purported misrepresentations, Garrett has not shown by clear and convincing evidence that the Court's Order was obtained by fraud, or that these representations prevented Garrett from presenting her defense. Accordingly, Garrett has not identified a compelling reason to reconsider the Court's Order on UBS's Motions.[6]

**B.   Motion for Attorney Fees**

In the March 10, 2015, Order, the Court found that it was reasonable for UBS to file the interpleader action due to the disputes to the validity of the Amendment, and stated that it would consider a Motion for Attorney Fees filed pursuant to Local Rule 54-16. Doc. #71 at 11. UBS filed this Motion on March 16, 2015. Doc. #72.

---

[6] To the extent that Garrett also argues that UBS's alleged misrepresentations also tainted the Court's rulings on her Motions, the Court finds that Garrett has failed to show by clear and convincing evidence that these rulings were obtained by fraud, or that they prevented Garrett from presenting a defense. *De Saracho*, 206 F.3d at 880.

UBS requests that the Court award attorney fees based on the lodestar method of calculation, in the amount of $43,551.90,[7] which represents a total of 133.80 hours of work on this case, at a blended hourly rate of $325.50. Doc. #72 at 3. UBS represented in its Motion that UBS billed an additional twenty hours at an hourly rate of $340, which would add an additional $6800 to the lodestar. *Id.* UBS's lodestar is based on work performed by four separate individuals: (1) David C. McElhinney, an equity partner at Lewis Roca Rothgerber, LLP, billing at a rate of $340 per hour; (2) Jesse Simpson, an equity partner at Lewis Roca Rothgerber, LLP, billing at a rate of $425 per hour; (3) Peter Wand, a partner at Lewis Roca Rothgerber, LLP, billing at a rate of $280.50 per hour; and (4) Patty Miller, a litigation paralegal and private investigator at Lewis Roca Rothgerber, LLP, billing at a rate of $161.50 per hour. *Id.* at 3-4.

UBS argues that the work performed, and time and labor required litigating this case weighs in favor of granting the full amount of UBS's lodestar. UBS argues further that it took steps to resolve this case in a straightforward and simple manner when it contacted Garrett on February 4, 2014, which would have allowed UBS to deposit funds with the court and be dismissed from the action without the need for significant attorney involvement. In response, Garrett requested that UBS immediately recognize her as Trustee. On March 10, 2014, UBS mailed Acknowledgment and Release forms to nine named beneficiaries. On March 13, 2014, UBS received a facsimile transmission from Daniel Page, a lawyer for beneficiary Martin, notifying UBS that Martin planned to contest the validity of the Amendment. At this point, UBS concluded that it had no option but to file the Complaint for Interpleader, on March 17, 2014.

Garrett raises a number of arguments in opposition to UBS's Motion for Attorney Fees, many of which concern Garrett's general disagreement with the Court's March 10, 2015, Order. Garrett's primary argument is that UBS should not recover attorney fees because it filed this interpleader action in bad faith and caused unnecessary delay. Doc. #75 at 4. As discussed in the March 10, 2015, Order, and reaffirmed in this Order, the Court finds that UBS justifiably filed the Interpleader action and diligently sought to resolve the issues pending before the Court.

---

[7] UBS's Motion states that UBS is requesting $43,552.30. It appears that this slight deviation from the lodestar actually requested was a typographical error.

Garrett also argues that "because the attorneys' fees are paid from the interpleaded fund itself, there is an important policy interest in seeing that the fee award does not deplete the fund at the expense of the party who is ultimately deemed entitled to it." *Id.* at 5; *Trs. of Dirs. Guild of Am.-Producer Pension Benefits Plans v. Tise*, 234 F. 3d 415, 427 (9th Cir. 2000). "Because the interpleader plaintiff is supposed to be disinterested in the ultimate disposition of the fund, attorneys' fee awards are properly limited to those fees that are incurred in filing the action and pursuing the plan's release from liability, not in litigating the merits of the adverse claimants' positions." *Tise*, 234 F.3d at 427. Compensable expenses include "preparing the complaint, obtaining service of process on the claimants to the fund, and preparing an order discharging the stakeholder from liability and dismissing it from the action." *Id.*

The Court recognizes the significant time and effort that UBS has extended in filing this interpleader action, responding to Garrett's pleadings, and appearing at hearings. However, the Court finds the fees requested by UBS to be excessive given the Ninth Circuit's caution that attorney fees to banks in interpleader actions are "typically modest" compared to the total value of the fund. *Id.* UBS has deposited approximately $193,000.00 with the Court (Doc. #79), and now requests more than a quarter of that figure in attorney fees (Doc. ##72; 81). Under the circumstances before the Court, the Court finds that an award of $20,000 in attorney fees is appropriate and fair to compensate UBS without depleting the funds available to claimants.[8]

### III. Conclusion

IT IS THEREFORE ORDERED that Garrett's Motion to Reconsider (Doc. #77) is DENIED.

IT IS FURTHER ORDERED that UBS's Motion for Attorney Fees and Costs (Doc. #72) is GRANTED in part. UBS shall be paid $20,000 in attorney fees out of the funds previously deposited with the clerk of court.

---

[8] In addition to her Opposition to UBS's Motion for Attorney Fees and Costs, Garrett filed a Supplemental Opposition to Motion for Attorney Fees and Costs, and Motion to Extend Time to Oppose. Doc. #86. This Motion requested thirty days to submit an itemized opposition to UBS's Motion for Attorney Fees. Because the Court has capped UBS's attorney fees at $20,000, the Court denies Garrett's motion as moot.

      IT IS FURTHER ORDERED that Garrett's Supplemental Opposition to Motion for Attorney Fees and Costs and Motion to Extend Time (Doc. #86) is DENIED as moot.

      IT IS FURTHER ORDERED that the parties and clerk of court shall hereafter use the caption from this Order in any subsequent filings.

      IT IS SO ORDERED.

      DATED this 27th day of May, 2015.

*[signature]*
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE