UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

* * *

CAROLYN GARRETT,

    Plaintiff,

    v.

GARRETT BULLOCK, DIANN MARTIN, CATHERINE HINTZEN, JASON GARRETT,

    Defendants.

3:14-CV-00141-LRH-WGC

ORDER

    Before the court are several motions by Plaintiff Carolyn Garrett ("Garrett"). Doc. ##105, 106, 125, 128, and 138.[1] Remaining Defendants Garrett Bullock, Diann Martin, Catherine Garrison, and Jason Garrett did not file responses.

**I.    Facts and Procedural History**

    This is a case involving the validity of a trust amendment that initially arose as an interpleader action. On March 10, 2014, UBS Financial Services ("UBS"), the financial institution that had instituted the interpleader was discharged. Doc. #71. On May 28, 2015, UBS's motion for attorney fees and costs was granted in part. Doc. #91. On July 16, 2015, Garrett filed a motion for re-taxation of costs. Doc. #105. On July 17, 2015, Garrett filed a motion for case statements, an injunction, and declarations from prior attorneys. Doc. #106. On July 21, 2015, Garrett's pending motions were stayed pending settlement negotiations. Doc. #109. On August 25, 2015, a settlement conference was held, and the parties were unable to reach a settlement agreement at that time. Doc. #122. On September 3, 2015, Garrett filed a

---

[1] Refers to the Court's docket number.

motion for certification and stay pending appeal or injunction.  Doc. #125.  On September 29, 2015, a motion for extension of time to file an appeal was filed by Garrett.  Doc. #128.

Following repeated failure of the parties to agree upon a proposed joint pretrial order pursuant to Local Rules 16-3 and 16-4, the magistrate judge scheduled a show cause hearing on October 20, 2015, to address the lack of preparation and submission of the proposed order. All remaining parties, except defendant Jason Garrett, participated in the hearing and a proposed joint pretrial order was prepared by the magistrate judge, with the input of all parties.  On November 2, 2015, the Court accepted the proposed order and issued its Joint Pretrial Order (doc. #136) for the trial of this action.  Trial was scheduled for February 16, 2016.  On November 11, 2015, Garrett filed a motion for sanctions and an opposition to the pretrial order. Doc. #138.

**II.    Addressing the Motions by Garrett Pending before the Court:**

**A.  Motion to Retax Costs (doc. #105)**

In her motion, Garrett requests further proof that the bill of costs which was taxed by the clerk is in fact a true statement.  Garrett appears to confuse the award of attorneys fee previously granted to UBS counsel with the bill of costs filed by UBS on March 16, 2015 (doc. #73). No objections to those costs have been filed in any specific fashion and the costs in the requested amount of one thousand sixty dollars ($1,060.00) were taxed by the Court Clerk on July 10, 2015 (doc. #102). The court notes that those costs appear to be customary costs incurred in litigation and the bill of costs was filed under oath by UBS counsel.  If some objection had been filed to those costs, it is unlikely it would have been successful.  The costs claimed are customary costs awarded to a prevailing party in litigation and were properly awarded to UBS in this action.

However, plaintiff's motion for retaxation of costs is cast in terms of a renewed objection and essentially a motion for reconsideration of the Court's previous award of attorneys fees to UBS in document #91.  As has occurred on multiple occasions in the history of this litigation, Garrett seeks to use motions to reconsider or clarify merely to re-argue positions which have been previously presented and considered by the Court. Also *see* the Court's order in doc. #101. *See Am. Ironworks & Erectors Inc. v. N. Am. Const. Corp.*, 248 F.3d 892, 899 (9th Cir. 2001).

The Court has ruled that UBS is entitled to an award of attorneys fees of twenty thousand dollars ($20,000.00), plus an award of costs of one thousand and sixty dollars ($1,060.00), and will not further reconsider this award.

However, in consideration of plaintiff's pro se status, the Court points out that actions in interpleader or in the nature of interpleader are provided for in 28 U.S.C. 1335. Section 2361 of 28 U.S.C. provides that in such actions, the "district court shall hear and determine the case, and may discharge the plaintiff from further liability, make the injunction permanent, and make all appropriate orders to enforce its judgment." Under this provision, federal courts have continued the former equity practice of allowing attorney fees to interpleading plaintiffs in strict actions of interpleader. (*E.g. Mutual Life Ins. Co. v. Bondusant*, 6 Cir., 1928, 27 F.2d 464; *Treinies v. Sunshine Mining Co.*, 9 Cir., 1938, 99 F.2d 651, aff'd., 1939, 308 U.S. 66, 60 S.Ct. 44, 84 L.Ed. 85). The reasons are that the plaintiff has benefited the claimants by promoting early litigation on ownership of the fund, thus preventing dissipation, (*see Louisiana State Lottery Co. v. Clark*, E.D.La., 1883, 16 F. 20; cf. *Trustees v. Greenough*, 1881, 105 U.S. 527, 26 L.Ed. 1157) and that the plaintiff should not have to pay attorney fees in order to guard himself against the harassment of multiple litigation. *Schirmer Stevedoring Co. v. Seaboard Stevedoring Corp.*, 306 F.2d 188, 193 (9th Cir. 1962). "The amount of attorney fees to be awarded in an interpleader action is committed to the sound discretion of the district court." *Trs. of Dirs. Guild of Am.-Producer Pension Benefits Plans v. Tise*, 234 F.3d 415, 426 (9th Cir.2000). Additionally, courts can reduce an interpleader's lodestar figure to ensure that it is not excessive compared to the interpleaded fund. *Id.* at 427. In its previous order, the Court examined UBS's itemized documentation and recognized that UBS expended significant time and effort responding to Garrett's numerous pleadings, which required written responses and court appearances. The Court did not find fault with UBS's evidence or expenditures, but noted that UBS's request for $43,551.90 was excessive in comparison to the total value of the interpleaded fund and reduced the figure accordingly to $20,000. Because the amount of attorney's fees awarded to UBS was within the Court's discretion, Garrett's motion to retax costs is denied.

///

**B. Motion for Case Statements; for Injunction against USB; and Declarations from Prior Attorneys (doc. #106)**

**1. Case Statements**

In her motion, Garrett demands relief from the court order to produce a final joint pretrial order until such time as all defendants have submitted signed statements of their defenses. Because the Court's Joint Pretrial Order has already issued (doc. # 136), the Court denies this request as moot. Further, Garrett also demands a court order for full disclosure from defendant's prior attorney as to who his clients were and a status hearing. As discovery closed long ago and the Joint Pretrial Order includes the identities of all remaining defendants in this case, these requests are also denied.

**2. Disclosure by UBS**

Garrett also demands a disclosure by UBS as described in Nevada Bar Ethics Opinion No. 34 (2006, Revised 2009). The State Bar of Nevada's Formal Opinion 34, revised on June 24, 2009, discusses the ethical ramifications of "ghost-lawyering" in Nevada. *S.E.C. v. ARVCO Capital Research, LLC*, No. 3:12-CV-00221-MMD, 2014 WL 5106100, at *7-8 (D. Nev. Oct. 10, 2014) reconsideration denied, No. 3:12-CV-00221-MMD, 2015 WL 5008770 (D. Nev. Aug. 17, 2015). The opinion defines "ghost-lawyering" as occurring "when a member of the bar gives substantial legal assistance, by drafting or otherwise, to a party ostensibly appearing pro se, with the lawyer's actual or constructive knowledge that the legal assistance will not be disclosed to the court." *Id.* The opinion goes on to state that "ghost-lawyering" "is unethical unless the 'ghost-lawyer's' assistance and identity are disclosed to the court by the signature of the 'ghost-lawyer' under Rule 11 upon every paper filed with the court for which the 'ghost-lawyer' gave 'substantial assistance' to the pro se litigant by drafting or otherwise." *Id.* The opinion provides that when such activity comes to light, the court may exercise its discretion: "(A) to require the pro se litigant to disclose whether the litigant is being assisted by a 'ghost-lawyer'; (B) if so, to require the pro se litigant to disclose the identity of the 'ghost lawyer'; and (C) to require the 'ghost-lawyer' to appear and sign all pleadings, motions and briefs in which the 'ghost-lawyer' assisted." *Id.* Here, throughout this lengthy litigation, there is no evidence to indicate that

1  UBS's attorney was "ghost-lawyering" for the defendants.  Moreover, the remaining defendants
2  in this case are identified, they have participated or been identified in repeated hearings and
3  conferences, and they are all qualified claimants and objectors to the amendment to the "Jo Anne
4  Garrett Family Trust" of March 15, 2013.  Additionally, discovery in this action was to be
5  completed by October 7, 2014 (ECF #30 at 7), there has never been a timely request to reopen
6  discovery, and the reopening of discovery has been expressly denied by the magistrate judge
7  (doc. #135).  Based upon this history, plaintiff's motion for disclosure is denied.

### 3. Injunction

Finally, Garrett requests that the Court issue an injunction that would ban further contact between the defendants and UBS until this case has been concluded.  First, UBS has been discharged and is no longer a party to this lawsuit.  Second, "[i]njunctive relief [is] an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008).  In order to obtain a preliminary injunction, a plaintiff must show: (1) the suffering of irreparable harm if injunctive relief is not granted; (2) success on the merits; (3) the balance of equities tips in favor of the moving party; and (4) that granting the injunction is in the public interest.  *See Stanley v. University of Southern California*, 13 F.3d 1313, 1319 (9th Cir.1994).  Alternatively, the party seeking an injunction must also show that (1) the party is likely to suffer irreparable harm absent the issuance of an injunction and (2) the existence of serious questions going to the merits and that the balance of hardships tips sharply in his favor.  *See Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir.2011).  A "serious question" is one for which the moving party has a "fair chance" of success on the merits.  *See Stanley*, 13 F.3d at 1319.  Here, Garrett has made no showing that she is entitled to such extraordinary relief.  Her motion for an injunction banning contact between the defendants and UBS is denied.

///

///

**C. Motion for Certification and Stay Pending Appeal or Injunction (doc. #125) and Motion for Extension of Time to File Appeal (doc. #128)**

**1. Certification and Stay Pending Appeal; Extension of Time to File an Appeal**

In her motion, Garrett requests certification and a stay pending appeal. Parties may only appeal "final decisions of the district courts." 28 U.S.C. § 1291. However, under certain circumstances, district courts may certify an issue for interlocutory appeal under 28 U.S.C. § 1292(b), which provides in part:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.

28 U.S.C. § 1292(b).

Certification of interlocutory appeals is only appropriate in exceptional situations, where doing so would prevent expensive and protracted litigation. *In re Cement Antitrust Litigation*, 673 F.2d 1020, 1027 (9th Cir.1982). A district court has discretion to certify an order for interlocutory appeal if the three following criteria are met: (1) the order involves a controlling question of law; (2) there is substantial ground for difference of opinion; and (3) an immediate appeal from the order may materially advance the ultimate termination of the litigation. *Id.* at 1026. The court should apply the statute's requirements strictly, and should grant a motion for certification only when exceptional circumstances warrant it. *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 475, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978). The party seeking certification to appeal an interlocutory order has the burden of establishing the existence of such exceptional circumstances. *Id.* "Even then, a court has substantial discretion in deciding whether to grant a party's motion for certification." *Zulewski v. Hershey Co.*, CV 11–05117 KAW, 2013 WL 1334159 (N.D.Cal. Mar.29, 2013). The Court has reviewed Garrett's motion for certification and stay pending appeal and determines that neither are warranted at this time. Accordingly, the Court denies Garrett's request for certification and stay pending appeal. Similarly, Garrett's request for an extension of time to file an appeal (doc. # 128) is denied.

///

**2. Injunction**

Next, Garrett requests that the Court issue an injunction that would protect the Trust's Assets from further depletion until the appeals process is over. "Injunctive relief [is] an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008). In order to obtain a preliminary injunction, a plaintiff must show: (1) the suffering of irreparable harm if injunctive relief is not granted; (2) success on the merits; (3) the balance of equities tips in favor of the moving party; and (4) that granting the injunction is in the public interest. *See Stanley v. University of Southern California*, 13 F.3d 1313, 1319 (9th Cir.1994). Alternatively, the party seeking an injunction must also show that (1) the party is likely to suffer irreparable harm absent the issuance of an injunction and (2) the existence of serious questions going to the merits and that the balance of hardships tips sharply in his favor. *See Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir.2011). A "serious question" is one for which the moving party has a "fair chance" of success on the merits. *See Stanley*, 13 F.3d at 1319. Plaintiff's grounds do not support injunctive relief and there is no issue of irreparable harm. Pursuant to the Court's order approving interpleader, the trust funds which were held by UBS have been deposited with the Court on April 14, 2015. Garrett's motion for an injunction is denied. Similarly, plaintiff's motion for an extension of time to file an appeal (doc. #128) is denied.

**D. Plaintiff's Opposition to the Court's Pretrial Order and Motion for Sanctions (doc. #138)**

**1. Pretrial Order**

After repeated failures by the parties to submit a proposed joint pretrial order in compliance with Local Rules 16-3 and 16-4, the magistrate judge scheduled a show cause hearing specifically for the purpose of addressing "the parties' inability or refusal to comply with the order of the court regarding the completion of a joint pretrial order" (doc. #131). On October 20, 2015, the hearing was conducted and participated in by relevant parties including the plaintiff. Over a period of approximately one hour and twenty minutes the magistrate judge

dedicated the hearing to the preparation of a proposed joint pretrial order. A proposed joint pretrial order was drafted and thereafter submitted to the Court. The Court accepted and adopted the document and the Court's Joint Pretrial Order was issued on November, 2, 2015 (doc. #136). It reflects the status of this litigation at this time. As reflected in the order, the following are the issues of fact to be tried and determined upon trial:

1. Whether the amendment to the Jo Anne Garrett Family Trust dated March 15, 2013, was valid.
2. Whether the Certificate of Independent Review by Peter J. Smith, Esq., was valid and in conformity of Nevada State Law.
3. Whether Peter J. Smith, Esq., was acting as an independent attorney as contemplated by NRS 155.093 et seq.

Exhibits and witnesses have been identified and there has been no supplementation or request for supplementation of additional exhibits or witnesses to the order. Plaintiff Garrett's objections to the Joint Pretrial Order and to rulings by the Court in this matter are preserved for any future appeal.

Garrett requests that the Court's pretrial order be rescinded, that proceedings for production of a joint proposed pretrial order continue, and that a signed joint pretrial order be submitted. No grounds have been presented to the Court which would warrant any modification to the Court's existing Joint Pretrial Order. However, in reviewing plaintiff's pleadings in this action, it is apparent that Garrett disputes whether she was a "caregiver" of Jo Anne Garrett at the time of the trust amendment which is central to the issues in this action.  The Court previously assumed that it was undisputed that she was such a caregiver.  Because that status is disputed by plaintiff Garrett, the Court recognizes that whether she was a caregiver to Jo Anne Garrett is one of the factual issues and questions to be considered at trial.  It is an important component of each of the three factual issues listed in the Court's Joint Pretrial Order.

**2. Sanctions**

Garrett also requests sanctions pursuant to Rule 16(f)(A-C) regarding defendants non-participation and Rule 11 for any refusal to submit signed amended pleadings from each in pro

per defendant. The court may, on a party's motion, after notice and a reasonable opportunity to respond, impose appropriate sanctions against another party for any violation of Rule 11(b) of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 11(c)(1). Similarly, the court may issue appropriate sanctions if a party does not participate in good faith at a scheduling or other pretrial conference. *See* Fed. R. Civ. P. 16(f)(1). The discretion district courts have to impose sanctions under either rule is broad. *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 387, 110 S. Ct. 2447, 2451, 110 L. Ed. 2d 359 (1990); *Fonar Corp. v. Magnetic Plus, Inc.*, 175 F.R.D. 53, 55 (S.D.N.Y. 1997). Here, the Court finds that the actions of the defendants do not rise to the level of sanctionable conduct, and thus sanctions are not warranted. Therefore, Garrett's motion for sanctions is denied.

**III.     Conclusion**

IT IS THEREFORE ORDERED that Garrett's Motion for Retaxation of Costs (Doc. #105) is DENIED.

IT IS FURTHER ORDERED that Garrett's Motion for Case Statements, Injunction, and Declarations (Doc. #106) is DENIED.

IT IS FURTHER ORDERED that Garrett's Motion for Certification of Appealability and Stay or Injunction (Doc. #125) is DENIED.

IT IS FURTHER ORDERED that Garrett's Motion for Extension of Time to File Appeal (Doc. #128) is DENIED.

IT IS FURTHER ORDERED that Garrett's Motion for Sanctions and Opposition to Pretrial Order (Doc. #138) is DENIED.

IT IS SO ORDERED.

DATED this 6th day of January, 2016.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE